OPINION OF THE COURT
Robert S. Rose, J.
Petitioner, Hasan Tezel, M.D., is the personal physician of Vera Merrill. He has obtained an order from another Justice of this court appointing a special guardian for his patient to investigate the necessity of a proposed nonemergency diagnostic breast biopsy and whether or not Vera Merrill has the *491 mental capacity to consent to the proposed diagnostic procedure. The petition and accompanying papers clearly note that there is no medical emergency involved here. They also assert that the patient is in need of the biopsy but lacks the mental capacity to consent to it. Petitioner seeks an order of this court determining that Vera Merrill does not have the mental capacity to consent to the proposed medical treatment and ordering a compulsory biopsy as well as whatever subsequent medical procedures are deemed necessary.
Vera Merrill is 78 years old and resides in the apartment complex located at 100 Roberts Street in Binghamton. She was admitted to Binghamton General Hospital on June 22, 1988 after being found by a friend in the vicinity of her home, wandering and confused. Reportedly, she had not eaten for a few days, but was alert and did not complain of pain or discomfort. She was admitted and diagnosed as having an irregular heart beat. Treatment led to the implantation of a permanent pacemaker on an emergency basis. Now she has been found to have a suspicious mass in her breast for which a biopsy and, if malignant, mastectomy, followed by radiation or chemotherapy, is recommended. Psychiatric evaluations indicate that she is cooperative, coherent, but somewhat illogical. While she has no hallucinations or delusions, she is hard to understand at times and not a good historian. She is reportedly disoriented and confused. Petitioner, the special guardian, and two consulting psychiatrists all conclude that she lacks mental capacity to give her informed consent to the biopsy and subsequent medical treatment.
Dr. Tezel’s petition does not assert that the patient refuses the diagnostic procedure. Nor does he say whether he has explained it to her and asked her for her consent. Rather, he indicates that, based upon Dr. Nemani’s and Dr. Undavia’s consultations, the "Patient is unable to understand the nature and severity of her condition, the risks of consequences of the proposed and alternate procedures or treatment, lacks the mental capacity to consent to the necessary medical treatment, and has no relatives or next of kin to give the necessary consent.”
Petitioner’s attorney has noted that there is no legislative authority for the court to act in this instance, but urges the court to exercise its inherent authority. Counsel has cited Matter of Weberlist (79 Misc 2d 753) to support his assertion that applications such as this are not unique, and that trial-level courts have, in the past, ordered nonemergency surgery *492 or diagnostic procedures under similar circumstances. However, the court is mindful that "[a] special proceeding is a form of a civil judicial proceeding which must be based on specific statutory authorization (1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 401.03)” (Matter of Town of Johnstown v City of Gloversville, 36 AD2d 143, 144-145, appeal dismissed 29 NY2d 639).
In addition, the enactment of Public Health Law § 2805-d by Laws of 1975 (ch 109) makes this application to the court unnecessary. The section resolves the dilemma expressed earlier in Matter of Long Is. Jewish-Hillside Med. Center v Levitt (73 Misc 2d 395). In that case, which involved emergency conditions, the court noted that a hospital, once it accepts a patient, also accepts the responsibility to treat that patient, whether or not he or she is capable of giving an informed consent.
"However, without obtaining á consent the hospital and doctors were faced with a dilemma of subjecting themselves to liability for damages if they proceeded with an unauthorized operation, or, to do nothing and let him die. The alternative was to seek the aid of the court.” (Matter of Long Is. Jewish-Hillside Med. Center v Levitt, supra, at 396.) For that compelling reason, the court permitted the same sort of procedure used here on behalf of Vera Merrill.
In Matter of Weberlist (79 Misc 2d 753, supra), the court reluctantly granted judicial authorization for surgery that was not of an emergency or life-saving nature to be performed on a severely retarded patient. However, the court also noted that it would not be necessary to entertain such a petition in an emergency situation because "the hospital could take the full responsibility for the course of treatment necessary under the circumstances without need for judicial authority.” (Matter of Weberlist, supra, at 755.)
Subsequent to that holding, section 2805-d of the Public Health Law was passed by the Legislature to limit the civil liability of those who administer medical treatment without consent. It resolves the dilemma expressed in Long Is. Jewish-Hillside Med. Center (supra) and implied in Matter of Weber-list (supra) by limiting the right of action based on lack of informed consent to nonemergency treatment and invasive diagnostic procedures. It also makes clear that, as in an emergency situation, the physician can take the full responsibility for the course of nonemergency treatment of a person *493 under a disability without judicial authority. Thus, it addresses the dilemma implicit in petitioner’s application here by providing a defense to such an action if informed consent is "not reasonably possible”. (Public Health Law § 2805-d [4] [c].) It provides other defenses which may apply here as well.
Since the Legislature has taken such steps to outline the limits of the liability of medical professionals under such circumstances, there is no basis for the court to further limit that liability.
If petitioner believes that the patient lacks the mental capacity to consent, then he may assert that as a defense, along with others that may be available, against any civil liability for damages for an unauthorized diagnostic procedure or operation. On the other hand, if the petitioner does not believe that such a defense exists, or has doubts about it which are not expressed in the papers, he should then seek the written consent of the patient. The Legislature has provided the petitioner with a statutory defense in either event.
Consequently, it is the decision and order of this court that in view of the statutory limitations imposed on any medical malpractice action based on the lack of informed consent, this special proceeding is neither necessary nor authorized and is, therefore, dismissed. Beth E. Secaur, Esq., the special guardian for Vera Merrill, is found to have rendered services in the sum of $375 which petitioner’s counsel indicates he has arranged to be paid by the patient’s attorney-in-fact.